**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: | CHAPTER 7 |
| Gaetano F. Celentano and Caterina Celentano, | |
| Debtors. | CASE NO.: 10-22833 (NLW) |
|  | **OPINION** |

**FILED**
JAMES J. WALDRON, CLERK
September 6, 2012
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/ Nelson Dos Santos, Deputy

**Before:**     **HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Adam G. Brief, Esq.
Mellinger, Sanders & Kartzman, LLC
101 Gibraltar Drive, Suite 2F
Morris Plains, NJ 07950
Attorneys for Chapter 7 Trustee

Darin D. Pinto, Esq.
Law Offices of Darin D. Pinto, P.C.
376 South Avenue east
Westfield, NJ 07090
Attorneys for Debtor

This matter initially came before the court on the Trustee's motion to compel the Debtors to provide access to the Debtors' residence. The Debtors responded to the Trustee's motion with a cross-motion to compel abandonment of the Debtors' residence. The court grants the Trustee's motion and denies the Debtors' motion.

## JURISDICTION

This court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. These motions are core proceedings under 28 U.S.C. § 157(b)(2)(A).

## STATEMENT OF FACTS

On April 28, 2010 (the "Petition Date"), Gaetano Celentano ("Mr. Celentano") and Caterina Celentano (collectively, "Debtors") filed for relief under Chapter 7 of the Bankruptcy Code. On April 30, 2010, the United States Trustee appointed Steven P. Kartzman ("Trustee") as the case trustee and he has continued as the trustee since that date.

It appears that the Debtors' need for Chapter 7 relief resulted from Mr. Celentano's participation with three other individuals in a real estate development company known as Warren 8, LLC. In furtherance of its development efforts, in September 2006 Warren 8, LLC obtained a construction loan from Two Rivers Community Bank f/k/a Town Bank ("TRCB") in the amount of $7,486,000. As part of the security for the construction loan, Mr. Celentano and the other three members of Warren 8, LLC gave TRCB personal guaranties, secured by mortgages on their respective residences. At some point in the development project Warren 8, LLC was not able to

remain current on the construction loan, and according to Debtors' counsel, the outstanding loan balance approximated $4,300,000 at the time of default. Ultimately, Warren 8, LLC filed a Chapter 11 case and all four members of that entity filed individual Chapter 7 cases.

In its Chapter 11 case, Warren 8, LLC and TRCB entered into a Cash Collateral Agreement, which provided in part that TRCB would agree to modify and/or eliminate the liabilities of the members of Warren 8, LLC as guarantors if the members could meet certain benchmarks for the marketing, sale and development of the Warren 8, LLC project. Mr. Celentano advises that this agreement was subsequently incorporated into the Warren 8, LLC Chapter 11 Plan. In fact, as reflected in §16.3 of the November 9, 2010 Order Finally Approving Disclosure Statement and Confirming Debtor's Chapter 11 Plan, as Modified, the personal liability of the members as guarantors was reduced to $250,000. Section 16.3 further provided that all mortgages would be discharged on receipt of $250,000 by TRCB. (Gaetano Celentano Affidavit, Ex. K)

This substantial elimination of the obligation to TRCB is the primary reason for the dueling motions before the court. At the time that the Debtors filed their Chapter 7 petition they identified ownership of a personal residence at 1700 Boulevard, Westfield, New Jersey ("Boulevard Property") and a parental residence at 53 Renaissance Boulevard, Franklin, New Jersey ("Renaissance Property"). The Boulevard Property was scheduled at a value of $830,000, with the secured claim valued at $830,000. Schedule D identified Homecomings Financial as the first mortgagee on the Boulevard Property, with its claim being fully secured. TRCB was identified as the holder of a collateral mortgage in the amount of $4,300,000, with an unsecured portion of $3,883,472. The Renaissance Property was identified as subject to a Use & Occupancy Agreement in favor of Mr. Celentano's parents and valued at $61,000, with the

secured claim valued at $61,000.[1] Schedule D identified Chase Home Finance, LLC as holding a mortgage on the Renaissance Property in the amount of $218,000, with an unsecured portion of $157,000. The Debtors also scheduled unsecured claims in the amount of $14,451,576.44. Following the filing of a Notice of Assets by the Trustee on November 15, 2011, proofs of claim totaling $2,803,207.60 were filed.

From the court's review of the docket, the papers filed in support of both motions and the arguments of counsel, it appears that the issue of whether the Debtors' case contained assets available for liquidation was a subject of thorough investigation by the Trustee from the outset. For example, six months after the Petition Date, in October 2010, the Trustee abandoned Mr. Celentano's interests in three different limited liability companies after determining that no value in those entities existed for the bankruptcy estate. In February 2011, in response to the inquiry from the Bankruptcy Clerk's office regarding case status, the Trustee responded that Mr. Celentano had interests in a number of entities and that the Trustee had not yet completed his investigation. The Trustee's assessment of the value of the Boulevard Property was completed only on October 20, 2011, when the Trustee received confirmation from counsel for TRCB that the guaranty and mortgage had been reduced. Importantly, it was only in June 2011 that the Trustee learned of the potential reduction of the TRCB obligation to $250,000. The Trustee claims that at no time prior to June 2011 had the Debtors disclosed that the guaranty and mortgage were subject to reduction. The Trustee filed a Notice of Assets in November 2011.

Equally, it appears that the issue of whether the Boulevard Property and/or the Renaissance Property have sufficient equity to make a sale of either property beneficial for creditors has been a debated subject between the Trustee and Debtors' counsel. The Trustee

---

[1] Mr. Celentano's father passed away prior to the commencement of this bankruptcy case.

4

maintains that the bankruptcy estate should benefit from the reduction of the TRCB mortgage to $250,000. The Trustee estimates the approximate equity available to the bankruptcy estate from the sale of the Boulevard Property as follows:

| | |
|---|---|
| $830,000 | Fair Market Value |
| (50,000) | Cost of Sale |
| (400,000) | First Mortgage |
| (250,000) | TRCB Mortgage |
| $130,000 | Equity |

The Debtors' position with regard to the existence of equity in the Boulevard Property has been threefold. First, the Debtors' counsel argued that the reduction in the TRCB guaranty and mortgage to $250,000 was likely to be vitiated by the inability of the members of Warren 8, LLC to pay that sum, and that non-payment would cause the TRCB obligation to "jump back to $1.2 million." (3/15/12 Steven P. Kartzman Certification, Ex. A) But, subsequent conversations between the Trustee and counsel for TRCB confirmed that the TRCB obligation subject to Mr. Celentano's guaranty and the TRCB mortgage remained at $250,000. That amount is reflected in the secured proof of claim filed by TRCB on February 10, 2012. Thus, the Debtors' counsel has not continued to advocate this position.

Alternatively, counsel for the Debtors and the Debtors urge the court to find that the Boulevard Property and the secured claims against the property should be valued as of the Petition Date. Under this approach the Boulevard Property has a value of $830,000 with secured claims totaling $4,713,472, leaving negative equity of $3,883,472. Based on this computation, the Debtors urge that the Trustee should be compelled to abandon the Boulevard Property under § 554(b) because it is of "inconsequential value and benefit to the estate." 11 U.S.C. § 554(b).

---

Mr. Celentano's mother continues to occupy the Renaissance Property.

The Debtors contend that the court should not consider the improvement in the value of the Boulevard Property that resulted from the post-filing reduction of the TRCB loan to $250,000 because the Debtors' assets and liabilities should be viewed as a "snapshot" on the Petition Date. Lastly, Debtors' counsel argued that the reduction in the TRCB mortgage resulted from services performed by Mr. Celentano and should be considered postpetition earnings and excepted from estate property.

The Debtors' argument in support of abandonment of the Renaissance Property rests on the fact that the property is in an age-restricted development, and that it is subject to a Use and Occupancy Agreement in favor of Mr. Celentano's mother. Based on these facts, the Debtors have submitted an appraisal that posits a fair market value of the Debtors' interest in the Renaissance Property of $61,000 as of the Petition Date. In addition, Debtors provide an attorney's opinion letter opining that the Use and Occupancy Agreement is in the nature of a life estate and that the open occupation of the Renaissance Property by Mr. Celentano's mother could constitute notice to a subsequent purchaser. Finally, Mr. Celentano supplied a supplemental affidavit in which he avers that his parents contributed the sum of $240,081.74 to the purchase of the property and reduction of the mortgage. He also stated that his parents always paid the expenses of ownership and use.

The Trustee views the available equity in the Renaissance Property very differently. The Trustee calculates available equity in the Renaissance Property as follows:

| | |
|---|---|
| $ 380,000 | Fair Market Value |
| (24,000) | Cost of Sale |
| (156,000) | Mortgage |
| $ 200,000 | Equity |

6

The Trustee completely discounts the analysis provided by the Debtors, contending that the Use and Occupancy Agreement was never recorded and that under the Trustee's strong-arm powers the transfer can be avoided because of the Trustee's status as a bona fide purchaser. Alternatively, the Trustee argues that avoidance is possible because the Debtors' granting of the Use and Occupancy Agreement was a fraudulent transfer. The Trustee asserts that when the Use and Occupancy Agreement was given the Debtors were insolvent, the transfer was to insiders and the Debtors did not receive value in exchange for the transfer. Under both arguments the Trustee does not recognize alleged life estate in favor of Mr. Celentano's mother and maintains that the fair market value of the Renaissance Property is $380,000.

## DISCUSSION

The ultimate issue presented for resolution by the competing motions is whether the Debtors have sufficiently demonstrated that the Boulevard Property and the Renaissance Property are of such inconsequential value and benefit to the estate that the Trustee must be compelled to abandon the properties under § 554(b) of the Bankruptcy Code. If the properties must be abandoned, there is no need to consider the Trustee's motion to compel access to the Debtors' property.

### A. Trustee's Exercise of Discretion

The duties of a Chapter 7 trustee are set forth in § 704 of the Bankruptcy Code. Pertinent to the matter at hand, under § 704(a)(1) the Trustee is obligated to "collect and reduce to money the property of the estate ... and close such estate as expeditiously as is compatible with the best interest of parties in interest," and under § 704(a)(4) to "investigate the financial affairs of the debtor." A trustee has substantial discretion in performance of these duties. *In re Cult*

7

*Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997). Likewise, a trustee's decision to abandon assets of the estate is discretionary. *Id.*; *see also Morgan v. K.C. Machine & Tool Co. (In re K.C. Machine & Tool Co.)*, 816 F.2d 238, 246 (6th Cir. 1987); *In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003). In the matter before the court it appears that the Trustee acted with appropriate diligence in investigating the affairs of the Debtors. As indicated in his reply to the Clerk's Office February 2011 inquiry, the Trustee did not move to close the estate because he continued to examine Mr. Celentano's business affairs. Most importantly, with regard to determining the value of the estate's real property, the Trustee confirmed the reduction of the TRCB mortgage in only October 2011. Thus, the Trustee's filing of a Notice of Assets in November 2011 was appropriate and the court does not discern any prejudice to the Debtors with regard to the Trustee's administration of the case.

      **B.**      <u>**Proper Date for Valuation of Estate Property**</u>

The party seeking to compel the trustee to abandon estate property bears the burden of establishing a prima facie case that "the property is of inconsequential value and benefit to the estate." *In re Paolella*, 79 B.R. 607, 610 (Bankr. E.D. Pa. 1987)(citing *In re Brannan,* 5 B.R. 505 (D.V.I. 1980)); *In re DiDario*, 232 B.R. 311, 313 (Bankr, D.N.J. 1999). The trustee may rebut the prima facie case by showing that the estate has equity in the property, "including *inter alia* proof that the secured creditor's liens are or can be subordinated to an interest of the trustee." *Id.* (citing *In re Kelly*, 21 B.R. 495 (Bankr. W.D. Va. 1982)).

In support of their motion to compel abandonment of the Boulevard Property, the Debtors argue that both properties should be valued as of the Petition Date. Valuation as of the Petition Date would be beneficial to the Debtors because the TRCB obligation had not yet been reduced to $250,000. The Debtors rely on a number of cases that find that the Petition Date is the

appropriate date for valuing estate property, however, these cases are factually inapposite to the present matter. The cases highlighted by the Debtors do not address valuation of estate property for purposes of determining whether property should be abandoned as having inconsequential value and benefit to the estate.

For example, *Young v. Camelot Homes, Inc. (In re Young)*, 390 B.R. 480 (Bankr. D. Me. 2008) and *Johnson v. Gen. Motors Acceptance Corp. (In re Johnson)*, 165 B.R. 524 (S.D. Ga. 1994) chose the petition date as the date for determining valuation of estate property for purposes of complying with § 1325(a)(5). Similarly, *Dean v. LaPlaya, Invs., Inc. (In re Dean)*, 319 B.R. 474 (Bankr. E.D. Va. 2004), and *W. Interstate Bancorp. v. Edwards (In re Edwards)*, 245 B.R. 917 (Bankr. S.D. Ga. 2000) found the petition date to be the appropriate date for purposes of confirmation of Chapter 13 plans and modification of secured claims under § 1322(b)(2), and are not even dispositive regarding the time for § 1322(b)(2) purposes. Most notably, the Court in *Dean* specifically acknowledged that there is no consensus in the case law regarding the proper valuation date even for purposes of modifying secured claims under § 1322(b)(2).[2] 319 B.R. at 477.

Moreover, the Chapter 7 cases cited by the Debtors – *United States v. Zlogar*, 126 B.R. 53 (Bankr. N.D. Ill. 1991); *Mays v. United States (In re Mays)*, 85 B.R. 955 (E.D. Pa. 1988); and *Crouch v. Pioneer Fed. Sav. Bank (In re Crouch)*, 76 B.R. 91 (Bankr. W.D. Va. 1987) – are particularly inapposite to the current matter because each case permitted lien-stripping under § 506(a), a practice subsequently overruled in *Dewsnup v. Timm*, 502 U.S. 410 (1992).

The Trustee correctly points out that there is no requirement in § 554 and Bankruptcy

---

[2]Indeed this court in *In re Smith*, No. 05-17203, 2006 WL 4452987 (Bankr. D.N.J. April 27, 2006) held that the hearing date in a Chapter 13 case for purposes of lien avoidance is the

9

Rule 6007 that limits a determination of the value of estate property or the extent of a secured claim to a "snapshot" taken as of the petition date. Recognizing this, the Court in *In re Siegel*, 204 B.R. 6, 8 (Bankr. W.D.N.Y. 1996) observed that

> In the balancing of burden and benefit, this Court must recognize that values are seldom static over time and circumstance. Even when the identification of an estate interest is fixed as of the date of bankruptcy filing, its value to the estate may fluctuate during the period of estate administration. . . Section 554(b) looks generally to value for the estate, without focus upon the immediacy of any return.

In *Siegel*, after the case had been pending for almost one year, the debtor moved to compel the trustee to abandon the estate's interest in a one-half interest in homestead property jointly held with a nondebtor spouse. The equity in the property approximated $103,000. *Id.* at 7. The debtor asserted that the trustee could offer for sale only the debtor's right of survivorship, which the debtor characterized as having speculative value, because the trustee had decided not to seek sale of the property under § 363(h). *Id.* at 8. The court declined to compel abandonment, stating that the trustee could still seek to maximize a return for creditors by either considering a discounted sale of the right of survivorship or a deferral of its sale to a later date when the whole property might be sold. *Id.* at 9. Similarly, in the case currently before this court, the sale of estate property, the Boulevard Property in particular, may produce funds sufficient to pay a dividend to creditors.

Bankruptcy Code § 506(a)(1), also indicates that the court need not look solely to the Petition Date to value an interest. It directs that the value of a secured claim is determined "in light of the purpose of the valuation and of the proposed disposition and use of such property..." 11 U.S.C. § 506(a)(1). It is also well recognized that under § 541(a)(6) postpetition appreciation of estate property inures to the benefit of the bankruptcy estate. *Vu v. Kendall (In re Vu)*, 245

---

confirmation hearing date.

B.R. 644, 647-48 (9th Cir. B.A.P. 2000); *Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1323 (9th Cir. 1991); *Paolella*, 85 B.R. at 977 (citing *Clark v. O'Neill (In re Clark)*, 711 F.2d 21, 23 (3d Cir. 1983)).  As explained in these cases, the term "proceeds" in § 541(a)(6) is sensibly read as encompassing postpetition increases in value, regardless of whether an increase is a product of a reduction in the amount of a lien, the passage of time or some other market event.

Judge Fox's decision in *Paolella* is particularly applicable to the matter before this court. In *Paolella*, the debtors similarly sought to compel the trustee to abandon the estate's interest in their residence.  The Court framed the issue before it as "whether potential equity in property created postpetition, but before the property is liquidated or abandoned, constitutes property of the estate."  *Paolella,* 85 B.R. at 975.  Like the matter at hand, the residence lacked equity on the date the Chapter 7 petition was filed.  It was encumbered by a judgment lien in the amount of $851,946.38.  Prior to the bankruptcy the debtors received an offer from the judgment holder under which it agreed to satisfy its judgment in return for payment to it of $100,000.  *Id.*  The debtors were not able to raise the money but continued to negotiate with the judgment holder postpetition.  *Id.*  The trustee was made aware of the negotiations.  *Id.*  Eventually, the judgment was sold for the sum of $125,000 to a group of relatives and friends (the "purchasers").  *Id.* at 976.

Subsequently the trustee filed a complaint against the purchasers to limit the purchasers' claim to $125,000.  *Id.*  The court determined that there was sufficient evidence before it indicating that the trustee had a reasonable probability of prevailing on his complaint and creating equity for the estate.  *Paolella*, 85 B.R. at 976.  As a result the Court held that abandonment was not appropriate and the debtors' motion was denied without prejudice.  *Id.* at 977.  The court pointed out that the fact that § 541(a)(6) includes proceeds of estate property

11

"means that when property of the estate is sold, whatever consideration is received belongs to the estate subject to the debtor's potential exemption rights under 11 U.S.C. § 522." *Id.* The Court further emphasized its conclusion, stating that

> Because sale does not generally, if ever, occur simultaneously with formation of a bankruptcy estate, § 541(a)(6) mandates that the estate receive the value of the property at the time of the sale. This value may include appreciation or be enhanced by other circumstances creating equity which occur postpetition.

*Id.* (citations omitted).

The court also acknowledged that had the judgment been satisfied after abandonment of the residence the improvement in value would have belonged to the debtors. *Id.* at 977. It further commented, however,

> I see nothing inequitable about a different result being mandated depending on whether abandonment has or has not occurred. The different results are entirely consistent with the principle of allowing a bankruptcy trustee an adequate opportunity to administer property of the estate to discover whether equity is available. Had the trustee instigated a compromise with a secured creditor (an entirely appropriate action for a trustee), I do not believe that any party would seriously argue that the resulting equity would accrue to the debtor rather than to the estate.

*Id.* at 978. (citations omitted).

Applying *Paolella* to the matter at hand, it is evident that the effect of the reduction of the TRCB mortgage to $250,000 prior to an abandonment of the Boulevard Property by the Trustee creates a potential for equity that may produce a dividend for creditors. If the court looks only to the Petition Date to determine the amount of the TRCB mortgage against the Boulevard Property the bankruptcy estate and its creditors are deprived of the opportunity to benefit from a potential sale. Accordingly, the court rejects the Debtor's argument that valuation is limited to a snapshot as of the Petition Date.

C.     **Postpetition Employment Compensation**

At the hearing, the Debtors' counsel alternatively argued that the appreciation in value of the Boulevard Property should be considered income from services performed by Mr. Celentano in the Warren 8, LLC bankruptcy, and therefore excluded from the reach of § 541(a)(6).[3]  To support this argument the Debtors rely on case law crediting the earning of stock options and severance pay to the debtors as a result of their postpetition employment.  The Debtors interpret the cases to stand for the proposition that any postpetition efforts of a debtor resulting in earnings for an estate should benefit the debtor.

The Debtors cite various cases in which the respective debtors maintained employment postpetition thereby entitling the debtors to certain stock options and severance payments that the debtors would not otherwise have been entitled to receive.  *See In re Allen*, 226 B.R. 857, 865, 867 (Bankr. N.D. Ill. 1998)(finding that the estate's property interest was the contingent right to exercise a stock option that existed on the petition date but determining that the portion of the property interest attributable to the debtor's postpetition employment is excluded from the estate).  In *Allen*, the court found that the continued employment solely benefitted the debtors because the bankruptcy estate would not have been entitled to the stock options or severance payments had the debtors stopped working on the petition date. *Id.* 867-68.

Here, the Debtors argue that Mr. Celentano's postpetition settlement negotiations with TRCB are analogous to continued postpetition employment.  The court disagrees.  The court notes that the Debtors' Amended Statement of Financial Affairs lists two sources of income –

---

[3] Section 541(a)(6) states that the bankruptcy "estate is comprised of all the following property, wherever located and by whomever held. . . proceeds, product, offspring, rents, or profits of or from property of the estate, expect such as are earning from services performed by an individual debtor after the commencement of the case."

part-time teacher and Custom Service Builders, Inc. (*See* Amend. Stmt of Fin. Affairs, Docket No. 5) Debtors do not list Warren 8, LLC as a source of income.  More importantly, Mr. Celentano's efforts to reduce his exposure as a member of Warren 8, LLC to a multi-million dollar liability reflects the effort of an equity owner, not an employee.

In short, neither the facts nor the arguments advanced by the Debtors demonstrate that the Boulevard Property should be abandoned by the Trustee.  To the contrary, the reduction in the TRCB mortgage demonstrates a likelihood that equity exists for the benefit of the bankruptcy estate.  The existence of equity, of course, depends on the sale price and the costs of sale, as well as whether the Debtors intend to claim their homestead exemption.  The Debtors' motion to compel abandonment will be denied without prejudice.  The Trustee's motion to compel access to the Boulevard Property will be granted, as it is in furtherance of his duties under § 704(a)(1) of the Bankruptcy Code.

### D. **The Renaissance Property**

The Renaissance Property was not the subject of the Trustee's motion to compel access. Nonetheless, the Debtors moved to compel its abandonment, arguing that they have demonstrated a lack of equity in the property.  The Debtors' position, however, lacks sufficient weight to compel abandonment.  As noted in *K.C. Machine & Tool*, "an order compelling the trustee's abandonment is the exception rather than the rule."  816 F.2d at 246.  This should certainly be true where the Trustee identifies meritorious avoidance litigation that may provide equity in property from which creditors may receive a recovery.  The Trustee posits that under N.J.S.A. 46:16-1, which was repealed effective May 1, 2012 and replaced by N.J.S.A. 46:26A-2, a deed granting a life estate is an instrument entitled to be recorded, and that as a result of the life

estate here not being recorded it can be avoided pursuant to § 544 of the Bankruptcy Code. Further, the Trustee contends that the granting of the life estate was a fraudulent transfer, claiming that the Debtors were insolvent at the time of the transfer, and that the Debtors did not receive any value in return. The Debtors claim that defenses exist to the Trustee's allegations.

These arguments and alleged facts require an adversary complaint to be filed. For example, the Debtors rely on an attorney's opinion letter that acknowledges that the life estate was unrecorded, and points out that Mr. Celentano's mother's occupancy of the Renaissance Property has been constant and open since the Debtors purchased the property. The opinion letter cites to *Schwoebel v. Storrie*, 76 N.J. Eq. 466 (Ch. 1909) as potentially placing a subsequent purchaser on inquiry notice. *See also Caplan v. Palace Realty Co.*, 110 A. 584 (N.J. Ch. 1920). Further, the Trustee has not developed facts of the alleged fraudulent transfer in the present record but rather has merely suggested them. Depending on how the record of the as yet unfiled adversary proceeding develops, the Trustee may not prevail. Nevertheless, the Trustee has outlined a plausible basis for finding equity may exist in the Renaissance Property, and that is sufficient at present for the court to deny the Debtors' motion.

## **CONCLUSION**

Postpetition appreciation of property values accrues to the benefit of the Chapter 7 estate prior to abandonment. The Debtors' present motion to compel the Trustee to abandon the Boulevard Property will be denied without prejudice. The Trustee's motion to compel access to the Boulevard Property will be granted. Because the Trustee has stated a plausible theory for avoidance of the life estate in the Renaissance Property, the Debtors' motion to abandon this property is denied without prejudice to renewal if the Trustee is not successful in his avoidance action.

\_\_\_\_/S/_____
NOVALYN L. WINFIELD
United States Bankruptcy Judge